IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL SCHUSTER, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | NO. 11-2079 |
| MICHAEL J. ASTRUE, Commissioner : | |
| of Social Security, : | |
| : | |
| Defendant. : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                                    July 10, 2012

Currently pending before the Court are Plaintiff Daniel Schuster's Objections to the Report and Recommendation of United States Magistrate Judge Elizabeth T. Hey. For the following reasons, the Objections are overruled.

**I.   PROCEDURAL HISTORY**

Plaintiff protectively filed for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 301, et seq., on August 18, 2008. (R. 161–63.)[1] His claim alleged disability since October 1, 2002, due to bipolar disorder, a pinched sciatic nerve on the left side, and alcoholism in remission. (Id. at 180.) The state agency denied Plaintiff's application on November 13, 2008, and Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). (Id. at 83–87, 88–90.) Following a hearing held on March 12, 2010, Administrative Law Judge ("ALJ") Janice Volkman denied Plaintiff benefits in a decision

---

[1] For ease of discussion, citations to the administrative record will be referenced as "R. [page number]."

dated April 30, 2010.  (Id. at 13–20.)  The Appeals Council denied Plaintiff's request for review on January 26, 2011, (id. at 1–3), making the ALJ's ruling the final decision of the agency.  20 C.F.R. § 416.1472.

Plaintiff initiated the present civil action in this Court on March 28, 2011.  His Request for Review set forth four alleged errors:  (1) the ALJ failed to properly consider the evidence offered by Dr. Bryer, the Commissioner's psychiatric consultant; (2) the ALJ failed to include the limitations imposed by Plaintiff's mental health impairments in questioning the vocational expert; (3) the ALJ failed to consider his back impairment in assessing his residual functional capacity; and (4) the ALJ failed to make an adequate credibility determination.  On May 22, 2012, United States Magistrate Judge Elizabeth Hey issued a Report and Recommendation ("R&R") deeming these contentions meritless and recommending that the ALJ's decision be affirmed.

Plaintiff filed Objections to the R&R, on June 6, 2012, asserting the following:  (1) the ALJ's evaluation of the opinion provided by Dr. Bryer was not based on substantial evidence; (2) the ALJ failed to properly consider Plaintiff's back impairment; and (3) the ALJ failed to consider Plaintiff's credibility.  Defendant filed a Response to these Objections on June 15, 2012, making them ripe for this Court's consideration.

## II.     STANDARD OF REVIEW[2]

When a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in *de*

---

[2] Plaintiff's medical history and the five-step legal framework for assessing a disability claim were adequately summarized by the Magistrate Judge.  In lieu of repeating that discussion, the Court incorporates by reference those portions of the R&R into this Memorandum.

*novo* review of the issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In so doing, the court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. See United States v. Raddatz, 447 U.S. 667, 676 (1980).

The Court's review of an ALJ's findings of fact, however, is limited to determining whether or not substantial evidence exists in the record to support the Commissioner's decision. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Stated differently, "[t]his Court is bound by the ALJ's findings of fact if they are supported by substantial evidence on the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence 'does not mean a large or considerable amount of evidence but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552 (1988)).

III.   DISCUSSION

    A.   **Whether the ALJ's Evaluation of the Opinion Provided by Dr. Bryer Was Not Based on Substantial Evidence**

Plaintiff's first objection stems from his original claim before the Magistrate Judge that the ALJ failed to consider the evidence offered by Dr. Bryer, the Commissioner's own psychiatric consultant. Dr. Bryer had examined Plaintiff, in connection with a prior application for benefits, on March 24, 2006, more than two years prior to his current application for SSI. He concluded that Plaintiff suffered from bipolar disorder, possibly cycling variety, and assessed

3

Plaintiff with a Global Assessment of Function ("GAF") score of 50. (R. 360.) As a result, he determined that Plaintiff suffered from marked limitations in the areas of interacting with co-workers and responding appropriately to work pressures and changes in a routine work setting. (Id. at 363.) The ALJ, however, rejected these findings of marked limitations, as follows:

> In a psychological report dated March 24, 2006, Jeffrey Bryer, Ed.D., met with the claimant for a consultative examination . . . . The claimant admitted to AA but alleged sobriety for 5 months. On the mental status examination (MSE) he accurately completed serial 7s; he was oriented in 4 spheres; had good activities of daily living (shops, cooks, cleans, pay bills, and manages personal hygiene). Dr. Bryer diagnosed bipolar disorder and AA in remission.
>
> In a medical source statement (MSS), Dr. Bryer assessed the claimant with "marked" limitations in his ability to: interact appropriately with co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. He has "moderate" limitations in his ability to: understand, remember and carry out short, simple instructions; and interact appropriately with the public and supervisors. I find that the medical record and the claimant's testimony do not support the "marked" limitations as found by the consultative examiner. Therefore, I do not accord great weight to this MSS.

(Id. at 18.)

Plaintiff asserts that the ALJ's conclusory statement rejecting Dr. Bryer's opinion is insufficient on its own to survive substantial evidence review. When Plaintiff raised this issue during federal court proceedings, defense counsel purportedly offered a post hoc rationalization for the ALJ's conclusion, which the Magistrate Judge then erroneously adopted. As Plaintiff contends that the Magistrate Judge's R&R on this issue was based entirely on arguments offered only by defense counsel and not propounded by the ALJ, he claims that his Objection should be sustained.

It is well established that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." SEC v. Chenery

4

Corp., 318 U.S. 80, 87 (1943).  As such, "'[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision;' the Commissioner may not offer a post-hoc rationalization."  Keiderling v. Astrue, No. Civ.A.07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008) (quoting Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000)).

Nonetheless, the court is not required "to read the ALJ's opinion in a vacuum."  Knox v. Astrue, No. Civ.A.09-1075, 2010 WL 1212561, at *7 (W.D. Pa. May 26, 2010).  The standard of review still requires that the reviewing court examine the record as a whole to determine whether the ALJ's reasoning is supported by substantial evidence.  Gaul v. Barnhart, No. Civ.A.07-351, 2008 WL 4082265, at *5 n.6 (E.D. Pa. Aug. 25, 2008).  "A 'comprehensive explanation' need not always accompany a decision to reject a piece of probative evidence, since 'a sentence or short paragraph would probably suffice' in most instances."  Knox, 2010 WL 1212561, at *7 (quoting Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981)).  Moreover, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."  Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989).  Where the error by the ALJ is harmless and would not affect the outcome of the case, remand is not warranted.  Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

With those principles in mind, the Court finds that the ALJ's decision to reject Dr. Bryer's assessment of Plaintiff's limitation is supported by substantial evidence of record.  In determining the weight, if any, to accord the opinion of a non-treating source, the ALJ must consider: (1) the nature of the examining relationship; (2) the nature of the treating relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a

whole; and (5) the specialization of the source offering the opinion.  Irelan v. Barnhart, 82 F. App'x 66, 71 (3d Cir. 2003) (citing 20 C.F.R. § 416.927)).  While the ALJ here could have eased judicial review by more explicitly enumerating her reasons for rejecting Dr. Bryer's opinion, she properly found, under the foregoing factors, that Dr. Bryer's opinion was not entitled to any significant weight.  As the ALJ remarked, Dr. Bryer's opinion, rendered after a one-time consultative visit with Plaintiff, was issued in 2006, more than two years prior to Plaintiff's application for benefits and shortly after a relatively brief period of sobriety.  (R. 18.)  The ALJ also noted that after Dr. Bryer's opinion, but before the current application, Plaintiff admittedly resumed substance abuse and had been sober for only a month prior to his current administrative hearing.  (Id.)  Moreover, the ALJ commented that mental status examination was relatively normal, with Plaintiff accurately completing serial 7s, oriented in four spheres, and maintaining good activities of daily living.  (Id.)  Finally, the ALJ stated that Plaintiff had undergone no mental health treatment in the past ten years.  (Id.)

With respect to the alleged "post hoc rationalization" put forth by defense counsel and accepted by the Magistrate Judge, the Court can discern only two possible instances.  First, the ALJ commented that the medical record and the claimant's testimony did not support the marked limitations as found by Dr. Bryer, but did not specifically reference the precise testimony that contradicted Dr. Bryer's report.  (Id.)  On review, the Magistrate Judge noted that although Dr. Bryer gave Plaintiff a marked limitation in ability to interact with co-workers, Plaintiff himself testified only that: "[t]he reason why I didn't get along with fellow workers is I was always the lower guy on the totem pole and whether it was to disrespect them or to – I just didn't listen to them, I just didn't listen to them."  (Id. at 54.)  Far from being post-hoc rationalization, such a

reference did nothing more than reflect the Magistrate Judge's review of the record as a whole and expand upon a rationale already offered by the ALJ.[3]

Second, that the Report and Recommendation relied on treatment notes from the Gaudenzia outpatient substance abuse program[4] to support the rejection of Dr. Bryer's opinion. In this instance, the Court finds that such discussion was, in fact, a post-hoc rationalization.[5]

---

[3] Specifically, the Magistrate Judge explained:

> First, as previously mentioned, Dr. Bryer's reported was prepared in March of 2006, more than two years prior to Plaintiff's application for benefits. In addition, Dr. Bryer found that Plaintiff had good social judgment. Tr. at 360. With respect to Dr. Bryer's conclusion that Plaintiff had a marked limitation in the ability to interact with coworkers, at the hearing the only problems identified in co-worker interactions were that he was "low man on the totem pole" and didn't listen to his co-workers, see id. at 54, and that when he was taking narcotics, he talked too much. "I'm a little too friendly with people. Therefore people don't want me to work for them because they want work to get done." Id. at 37. It is unclear to what extent Plaintiff's use of alcohol and prescription narcotics contributed to Dr. Bryer's conclusion that Plaintiff had a marked limitation in this area.

(R&R 14–15 (footnotes omitted).)

[4] Plaintiff was treated at Gaudenizia, designed for adults with chemical dependency, due to his continued substance abuse. (R. 372–82.) Although the doctors in the program commented on Plaintiff's mental health conditions, such a program does not clearly constitute mental health treatment that would undermine the ALJ's finding that Plaintiff had had no mental health treatment for the past ten years. (Id. at 18.) Plaintiff's burden required him to show that substance abuse was not a contributing factor material to his mental health disability. Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003)

[5] The Magistrate Judge remarked:

> Moreover, Dr. Bryer's is not the only mental health evidence in the record, and the other reports in the record are more timely. Plaintiff was treated at the Gaudenzia outpatient program from September to December 2009, where he was treated by Dr. Mahajan, a psychiatrist. Tr. 372. Dr. Mahajan diagnosed Plaintiff with major depressive disorder and found that he had a GAF of 55. Id. at 379. There is no evidence of follow-up treatment after that date. Additionally, Dr. Poloni completed a Psychiatric Review Technique Form on November 13, 2008, finding that Plaintiff

Although the documents were part of the administrative record in this case, the ALJ did not even mention them, let alone discuss their import. In turn, this Court cannot determine what weight, if any, the ALJ gave to such documents when rendering her decision. To now find that these records can constitute substantial evidence sufficient to support the ALJ's rejection of Dr. Bryer's assessment contravenes well-established legal principles condemning such post-hoc justifications.

This minor error, however, has little bearing on the just result in this case, as the record as a whole reveals that the ALJ's decision to not credit the marked limitations imposed by Dr. Bryer was clearly grounded in substantial evidence and law. The ALJ expressly took into account: (1) the nature of the examining relationship, noting that it was a one-time examination occurring two years prior to the current application; (2) the fact that there was no treating relationship; (3) the fact that Dr. Bryer's opinion was contrary to his own objective findings and seemed to rest solely on Plaintiff's subjective reports; and (4) the fact that the opinion was not consistent with the

---

    had only moderate limitations in maintaining social functioning and maintaining concentration, persistence or pace. Id. at 344. In the Mental Residual Functional Capacity Assessment, Dr. Poloni found that Plaintiff was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, and his ability to accept instruction and respond to criticism from supervisors. Id. at 347-48. In all other areas, the Dr. [*sic*] Poloni found that Plaintiff was not significantly limited. Id. Although Dr. Poloni's assessment appears to be based on a review of Plaintiff's records rather than an examination, his assessment occurred after the changes to Plaintiff's mental health medications. In addition, Dr. Poloni's conclusions are consistent with Plaintiff's testimony regarding his activities of daily living, including two hours a day exercising, attending AA meetings, reading, and watching television. Id. at 40-42. Thus, I conclude that there is significant evidence to support the limited weight the ALJ gave Dr. Bryer's assessment.

(R. 16 (footnotes omitted).)

record as a whole, including Plaintiff's own testimony and the absence of any mental health treatment provided outside the context of his continued substance abuse. As such, the Court concurs with the Magistrate Judge that remand for additional analysis is simply unwarranted on the face of the record. At this level of judicial consideration, the Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (quotations omitted). Given such a deferential standard, the Court cannot sustain Plaintiff's first Objection.

### B. Whether the ALJ Failed to Properly Consider Plaintiff's Back Impairment

Plaintiff's second Objection argues that the ALJ failed to properly consider Plaintiff's chronic back pain when assessing Plaintiff's residual functional capacity ("RFC"). Although Plaintiff does not challenge the ALJ's finding that that impairment was non-severe under step two of the sequential analysis,[6] he argues that the ALJ was still required to consider and explain the individual and combined limitations and restrictions imposed by all of his impairments, regardless of severity. Yet, according to Plaintiff, nowhere in the decision does the ALJ state that she considered this back impairment. On Request for Review, defense counsel then

---

[6] Step two of the sequential analysis places a burden on the claimant to show that her impairment is severe. 20 C.F.R. § 416.920(c). An impairment is "severe" when it is "of a magnitude sufficient to limit significantly the individual's 'physical or mental ability to do basic work activities.'" Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982) (quotations omitted). Conversely, a non-severe impairment does not significantly limit or has only a minimal effect on a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a); see also Bowen v. Yuckert, 482 U.S. 137, 154 n.12 (1987). In addition, the impairment must be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); see also Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

provided another post hoc rationalization to justify the absence of any RFC limitations related to Plaintiff's back impairment and the Magistrate Judge adopted such argument.  Plaintiff now asserts that the Magistrate Judge's alleged post hoc justification constitutes error.

"'Residual Functional Capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'"  Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000)) (quotations omitted); 20 C.F.R. § 416.925(a)(1)).  In determining a claimant's residual functional capacity, all of the claimant's impairments, including those not considered "severe" must be considered.  20 C.F.R. § 416.945(a)(2).  Additionally, the ALJ must consider all evidence of record, including the claimant's subjective complaints and evidence of activity level.  Burnett, 220 F.3d at 121 (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986)).  "Where the Commissioner finds at least one of a claimant's impairments to be severe and adequately incorporates any limitations resulting from both severe and non-severe impairments into his residual functional capacity assessment, the specific determinations at the second step concerning the non-severe impairments are of no dispositive significance."  Lambert v. Astrue, No. Civ.A.08-657, 2009 WL 425603, at *13 (W.D. Pa. Feb. 19, 2009); see also Clark v. Astrue, No. Civ.A.09-933, 2010 WL 1425326, at *14 (W.D. Pa. Apr. 6, 2010).

In the present case, the ALJ did not list Plaintiff's back pain among his severe impairments, but she nonetheless gave full consideration to the limitations caused by that pain.  First, the ALJ remarked that an MRI of Plaintiff's lumbar spine showed normal anatomic alignment.  (R. 17.)  Second, the ALJ discussed the findings of orthopedist Robert Cabry, M.D.,

who, upon evaluation of Plaintiff's lumbar spine, found limited range of motion and a limp, but deemed Plaintiff otherwise neurovascularly intact. (Id. at 17–18.) Dr. Cabry assessed Plaintiff with chronic back pain, but noted no significant pathology on the MRI, and recommended only pain medications. (Id. at 18.) Third, the ALJ considered Plaintiff's daily activities, which included taking out the trash and walking outside. (Id. at 17.) Indeed, Plaintiff expressly testified that he followed an exercise regimen for his legs and back, which amounted to two hours of exercise a day, including walking for thirty minutes and lifting up to thirty pounds. (Id.) Ultimately, notwithstanding this limited evidence of a severe back impairment, the ALJ's final RFC limited Plaintiff to light work with a sit/stand option and for simple one to two step tasks. (Id. at 18.) As aptly noted by the Magistrate Judge, "contrary to Plaintiff's assertion that the ALJ failed to consider the effects of Plaintiff's back impairment on his ability to work . . . the RFC assessment by the ALJ was actually more restrictive than the activities to which Plaintiff testified." (R&R 19–20.) Accordingly, Plaintiff's second Objection is likewise overruled.

### C. Whether the ALJ Failed to Properly Consider Plaintiff's Credibility

Plaintiff's final Objection contends that the ALJ failed to explain what portions of Plaintiff's testimony she credited and which she did not. When Plaintiff raised this argument in his Request for Review, defense counsel allegedly again provided post hoc rationalization and the Magistrate Judge improperly accepted it. As such, Plaintiff contends that the Court should decline to adopt the R&R.

It is well-established that an ALJ is required to "give serious consideration to a claimant's subjective complaints of pain [or other symptoms], even where those complaints are not supported by objective evidence." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing

Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)).  Objective evidence of the symptoms themselves need not exist, although there must be objective evidence of some condition that could reasonably produce them.  Green v. Schweiker, 749 F.2d 1066, 1070-71 (3d Cir. 1984). Where medical evidence supports a claimant's complaints, the "complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason, 994 F.2d at 1067–68.  The ALJ, however, "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible."  Weber v. Massanari, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001) (citing Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974)).

     Under 20 C.F.R. § 416.929(c)(3), the kinds of evidence that the ALJ must consider, in addition to the objective medical evidence, when assessing the credibility of an individual's statements include: the individual's daily activity; location, duration, frequency, and intensity of the individual's symptoms; factors precipitating and aggravating the symptoms; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; treatment, other than medication, received for relief of the symptoms; any non-treatment measures the individual uses to relieve pain or symptoms; and other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3). Moreover, the ALJ should account for the claimant's statements, appearance, and demeanor; medical signs and laboratory findings; and physicians' opinions regarding the credibility and severity of plaintiff's subjective complaints.  Weber, 156 F. Supp. 2d at 485 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (S.S.A. 1996)).  Ultimately, the ALJ's "'determination or decision must contain specific reasons for the finding on credibility, supported

by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" Schwartz v. Halter, 134 F. Supp. 2d 640, 654 (E.D. Pa. 2001) (quoting SSR 96-7p; Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999)).

The ALJ in this matter thoroughly discussed the substance of Plaintiff's testimony and subjective complaints. (R. 17.) Thereafter, she engaged in a review of the objective medical evidence of record, including: (1) MRIs of the right knee and lumbar spine; (2) Plaintiff's meeting with orthopedist Robert Cabry; and (3) Jeffrey Bryer, Ed.D's psychological report and medical source statement. (Id. at 17–18.) Ultimately, the ALJ concluded that "[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the given] residual functional capacity assessment." (Id.)

In affirming this credibility analysis, the Magistrate Judge relied on two points. First, the Magistrate Judge noted that Plaintiff's complaints were inconsistent with his testimony of his activities, including how much walking and lifting he could do. (R&R 21.) This statement was not a post hoc rationalization, as the ALJ herself commented on this inconsistent testimony. (See R. 17 (noting that Plaintiff, at one point, said he could only walk one block and lift five pound and, at another point, stated that he exercised two hours a day with walking of up to thirty minutes and lifting up to thirty pounds).) Second, the Magistrate Judge observed that the there were minimal clinical findings concerning Plaintiff's back impairment, thus justifying the ALJ's

limitation of Plaintiff to do light work with a sit/stand option. (R&R 21.) This, too, was not a post hoc rationalization, as the ALJ also remarked that "an MRI of the lumbar spine showed normal anatomic alignment." (R. 17.)

Ultimately, the Court finds no error in the Magistrate Judge's recommendation that the Court affirm the ALJ's credibility analysis. Indeed, Plaintiff himself concedes that the rationales provided by the Magistrate Judge (which were also provided by the ALJ) "may have been sufficient to support a credibility finding." (Pl.'s Objections 3.) Accordingly, the Court overrules this final Objection.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court will overrule Plaintiff's Objections and adopt the Report and Recommendation in its entirety. An appropriate Order follows.